**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **17-01143-jw**

# ORDER ESTABLISHING BIDDING AND OTHER PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTORS

The relief set forth on the following pages, for a total of 10 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**06/28/2017**



*/s/ John E. Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 06/28/2017

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>F.I.G. Daufuskie 1, LLC, *et al.*,[1]<br><br>Debtors. | Case No. 17-01143-jw<br><br>Chapter 11<br><br>Joint Administration |

**ORDER ESTABLISHING BIDDING AND OTHER PROCEDURES
IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL
ASSETS OF THE DEBTORS**

THIS MATTER came before the Court for hearing on June 21, 2017 on the Expedited Motion for Order Establishing Bidding and Other Procedures in Connection with the Sale of Substantially All Assets of the Debtors (the "Bid Procedures Motion") filed on June 2, 2017 by F.I.G. Daufuskie 1, LLC, F.I.G. Beach Cottages, LLC, F.I.G. Beach Club, LLC and Daufuskie Embarkment, LLC (collectively, the "Debtors") as debtors-in-possession in these cases under joint administration. On the same date, the Debtors also filed a Motion for Order (I) Authorizing the Sale of Substantially All Assets of the Debtors Free and Clear of Liens, Claims, Encumbrances, and Other Interests Pursuant to 11 U.S.C. § 363; and (II) Authorizing the Assumption and Assignment of Executory Contracts Pursuant to 11 U.S.C. § 365 (the "Sale Motion"). The Sale Motion seeks authorization pursuant to 11 U.S.C. §§ 363(b) and (f) for a sale to Odeon Singapore Limited, assignee of Kuikawa Holding, BV, assignee of Kuikawa, BV, f/k/a Lex van Hessen Holding, BV, or its assigns or designee (hereinafter, the "Purchaser" or "Odeon") of the Purchased

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's tax identification number are: F.I.G. Daufuskie 1, LLC (8232), Case No. 17-01143; F.I.G. Beach Cottages, LLC (4208), Case No. 17-01144; F.I.G. Beach Club, LLC (4364), Case No. 17-01145; and Daufuskie Embarkment, LLC (7449), Case No. 17-01146. The Court entered an Order for Joint Administration of these Chapter 11 cases on March 16, 2017.

Assets (as defined below) free and clear of liens, claims, and encumbrances for the purchase price of (a) $19,000,000.00, which consists of a credit bid pursuant to 11 U.S.C. § 363(k), (b) the assumption of obligations for payment of ad valorem taxes due on the Purchased Assets, and (c) the assumption of the Debtors' obligations under any contracts or leases designated for assumption by Purchaser (collectively, the "Purchase Price"), as more fully described in the Asset Purchase Agreement between the Debtors and Odeon (the "APA") attached as **Exhibit A** to the Sale Motion, subject to higher and better bids through the sale process. The assets to be sold to Purchaser comprise substantially all assets of the Debtors, with certain excluded assets, as set forth more specifically in the APA and summarized generally in the Sale Motion (the "Purchased Assets"). The proposed sale is scheduled to close within fifteen (15) days of the entry of a final sale order in this matter (the "Sale Closing").

The Bid Procedures Motion requests entry of an order: (i) approving both Odeon as the purchaser of the Purchased Assets and the APA (the "Stalking Horse Bidder"), subject to higher and better offers being submitted as provided in this Order, (ii) establishing bidding procedures in connection with the proposed sale to the Purchaser, and (iii) setting minimum bidding increments to help facilitate an orderly sale process in the event that multiple bidders submit qualifying offers to purchase the Purchased Assets.

By the terms of the Sale Motion, the proposed sale, if approved and consummated, will allow the Debtors to pay the secured indebtedness owed to Odeon and potentially provide funds for distribution to other creditors, including junior secured creditors, trade vendors and unsecured creditors.

It appearing that the proposed bidding procedures are commercially reasonable and will facilitate the sale process and maximize the value of the Purchased Assets for the estates and that

2

the relief ordered is in the best interests of the estates, it is hereby:

ORDERED, ADJUDGED and DECREED as follows:

1. The Bid Procedures Motion is granted as set forth herein.

2. Odeon is approved as the Stalking Horse Bidder pursuant to the terms of the Sale Motion, the APA and its rights set forth therein. To the extent it is outside of the scope of 11 U.S.C. § 1108, the Debtors are hereby authorized to execute the APA with Odeon on behalf of the Debtors' estates, with the sale of the Debtors' assets pursuant to the APA remaining subject to Court approval upon the hearing on the Sale Motion, and to proceed with the sale process described herein.

3. The following bidding procedures are approved:

   a. Any bid from any persons or entity other than Odeon to purchase the Purchased Assets, in order to be a qualifying bid (a "Qualified Competing Bidder" and a "Qualified Competing Bid"), shall:
      i. be in writing and accompanied by a redlined APA identifying the differences in the bidder's proposed document in comparison with the Odeon APA;
      ii. contain terms and conditions that are the same, or substantially similar, in material respects to the APA, other than the identity of the bidder and the amount of the Purchase Price;
      iii. be accompanied by a written acknowledgment and agreement that the terms of the bid are substantially similar in all material respects to the APA, except for the identity of the bidder and the Purchase Price, and that the bidder, should it be declared the winning bidder, will enter into an APA with the Debtors confirming the terms of such winning bid;
      iv. be accompanied by a deposit (in certified funds payable to the trust account of counsel for the Debtors) in an amount equal to at least ten percent (10%) of the bid amount (the "Deposit"), which, if such party

3

       is (A) the highest and best bid, or (B) the second highest and best bid, designated as the Back-Up Bidder (as defined in subparagraph 3.f below), shall be non-refundable until the closing, at which point (x) the Deposit of the highest bidder shall be credited against the closing price and, upon that closing, the Deposit of the Back-Up Bidder shall be refunded to the Back-Up Bidder, or (y) the highest bidder fails to close and its Deposit is forfeited to Odeon, and the Deposit of the Back-Up Bidder shall be credited at closing in favor of the Back-Up Bidder, or (z) neither the highest bidder nor the Back-Up Bidder timely close, at which point both Deposits will be forfeited to Odeon and the closing under the Odeon credit bid shall be promptly consummated;

  v. be a cash offer (*i.e.*, an offer that provides that the purchase price will be paid in cash upon closing) that exceeds the Purchase Price by at least Two Hundred Fifty Thousand and no/100 Dollars ($250,000.00) (the "Initial Overbid");

  vi. include satisfactory evidence of the financial ability of the Qualified Competing Bidder to timely consummate the purchase for cash; and

  vii. be received by the Debtors' counsel, Julio E. Mendoza, Jr., Esq. at 1230 Main Street, Suite 700, Columbia, SC 29201 or at rmendoza@nexsenpruet.com, no later than the close of business seven days prior to the hearing on the Sale Motion (the "Sale Hearing"), which is scheduled for **August 30, 2017, at 10:30 a.m. in this Court, at 145 King Street, Room 225, Charleston, South Carolina 29401**. A representative of the Debtors and the Debtors' sales and marketing agent shall appear at the Sale Hearing to present such testimony as is necessary or appropriate.

b. The determination of whether a bid is a Qualified Competing Bid shall be made by the Debtors in the exercise of their reasoned business judgment, and in consultation with Odeon and subject to Odeon's consent (upon the Debtors' prompt disclosure of such bid and bid packages with Odeon), such

consent of Odeon not to be unreasonably withheld. In the event of a dispute between the Debtors and Odeon, or in the event a bidder disputes the determination made by the Debtors in consultation with Odeon, the Court shall resolve the issue of whether the bidder is a Qualified Competing Bidder.

c. In the event of timely receipt of a Qualified Competing Bid, the Debtors will conduct an auction (the "Auction") for the Purchased Assets at the time and location of the Sale Hearing. The Debtors will use their best business judgment regarding any submitted bids and shall consult with and obtain the consent of Odeon (such consent not to be unreasonably withheld), to determine if any such bids, as modified and improved or increased, constitute higher and better bids as set forth herein. The Debtors shall report to the Court two (2) business days prior to the Sale Hearing if they do not consider a particular bid(s) to be a Qualified Competing Bid or if no additional bids are received.

d. The Debtors and any interested parties with standing shall have the right to object to any bid being deemed, or not being deemed, a Qualified Competing Bid. The Court shall decide any dispute over what constitutes a Qualified Competing Bid, and nothing in this Order shall be read to prohibit the Court from considering higher or otherwise better bids on terms that differ from the Debtors' proposed sale in the Sale Motion.

e. In the event the Debtors receive one or more Qualifying Competing Bids as described in paragraph 3.a above, any Qualified Competing Bidder, but not the Purchaser (as agreed by Odeon), shall have the unconditional right to submit an "overbid" by delivering to the Debtors' counsel, no later than the beginning of the Auction, two signed copies of an amendment to the APA in which the Purchase Price set forth therein exceeds the higher purchase price offered by another Qualified Competing Bidder pursuant to paragraph 3.a above. Any higher bid of a Qualified Competing Bidder at or prior to the Auction shall be subject to the Debtors' acceptance of still higher and better bids submitted before or during the Auction in compliance with this section;

5

provided, however, that such higher and better bid shall equal the sum of: (A) the Purchase Price in cash under the amendment to the APA submitted by the then highest Qualified Competing Bid; plus (B) an additional incremental bid amount of at least One Hundred Thousand and no/100 Dollars ($100,000.00) (a "Yet Higher Offer"). In the event of Yet Higher Offers, each of the Qualified Competing Bidders shall have the continuing right to increase its Purchase Price to exceed the Yet Higher Offer of any Qualified Competing Bidder, and each Qualified Competing Bidder shall have the continuing right to continue to submit an overbid in minimum amounts of at least $100,000.00 more than the previous bid, unless and until such time as no other Qualified Competing Bidder makes a further overbid and the Auction is concluded.

f.  In the event that a Qualified Competing Bid is received, the Debtors will request the Court to approve the next highest bid as a back-up bid (the "Back-Up Bid" and the "Back-Up Bidder"). By submitting a bid, each party agrees that if it is chosen as the Back-Up Bid, it is committing to be an alternate winning bid that will close in the event the bid deemed at the Auction to be the highest and best bid fails to close. Therefore, if the successful bidder fails to close and is unable to pay the bid price within ten (10) business days of the entry of a final order approving the sale, the successful bidder shall forfeit its Deposit (made pursuant to paragraph 3(a)(iv) above) to the Debtors' senior secured lender, Odeon, and the Debtors shall close the sale of the Assets to the Back-Up Bidder without the necessity of obtaining another order from this Court. If any Back-Up Bidder fails to close and is unable to pay the bid price within ten (10) business days of notice of the higher bidder's failure to close, then such Back-Up Bidder shall forfeit its Deposit (made pursuant to paragraph 3(a)(iv) above) to the Debtors' senior secured lender, Odeon. All forfeited Deposits shall be promptly paid to Odeon not later than three (3) business days after the deposit is forfeited.

g.  In the event that the successful bidder at the Auction fails to timely close its purchase of the Purchased Assets and the Back-Up Bidder also fails to timely

    close its Back-Up Bid, the Debtors shall either (i) promptly close the Stalking Horse Bid with Odeon, within seven (7) calendar days after the failure of the Back-Up Bidder to timely close (as such may be extended by agreement with Odeon), or (ii) with Odeon's consent, seek to close, through consensual reinstatement, with any lower Qualified Competing Bidder that was neither the successful bidder at the Auction nor the Back-Up Bidder.

h. The Deposit made by any Qualified Competing Bidder, pursuant to paragraph 3(a)(iv) above, who is neither the successful purchaser of the Purchased Assets nor the Back-Up Bidder shall be returned to such Qualified Competing Bidder within three (3) business days after the Sale Hearing. The Deposit made by any Qualified Competing Bidder that is designated as the Back-Up Bidder shall be returned to such Qualified Competing Bidder within three (3) business days after the Sale Closing to the winning bidder.

i. Acceptance by the Debtors of a Qualified Competing Bid as the winning bid or the Back-Up Bid shall, in all respects, be subject to the entry of a final sale order by the Court authorizing the Debtors to consummate the sale.

j. If the Debtors accept Qualified Competing Bids as the winning bid and the Back-Up Bid, those Qualified Competing Bids shall remain open and irrevocable through Sale Closing. By submitting a bid, each bidder is expressly agreeing to be bound to these terms, both as a winning bidder and a Back-Up Bidder.

k. The Court shall resolve any dispute regarding any aspect of the foregoing bidding procedures.

4. The Debtors state that they intend to hire a sales and marketing agent to market the Purchased Assets in this matter for a period of approximately sixty (60) days (the "Marketing Period"), subject only to Alternative Transaction provisions of the APA. The Debtors shall file the appropriate application and statements to obtain authorization for such employment. Notwithstanding any provision in the APA to the contrary, the Debtors' failure to commence the marketing of the Purchased Assets through a sales and marketing agent promptly shall constitute

grounds for Odeon to withdraw from the APA and seek to enforce its rights or remedies as a secured lender before this Court (all rights of Odeon in such regard are fully preserved). Commencement of the sales and marketing agent's work shall be confirmed by an e-mail from such sales and marketing agent to Odeon and its counsel not later than Thursday, June 29, 2017, that the marketing has commenced. The Debtors may seek retention of such professionals on a *nunc pro tunc* basis.

5.   The Debtors shall take reasonable steps to market the proposed sale and solicit higher or otherwise better offers, and nothing in this Order pre-approves the Debtors proposed marketing efforts.

6.   The Debtors and Odeon shall provide to each other the executed signature pages for the APA no later than Thursday, June 29, 2017. In the event the Debtors fail to provide their executed signature page(s) of the APA by that date, upon request by Odeon or the United States Trustee, the Court may appoint a special agent for the Debtors to execute the APA on behalf of the Debtors, and to present such executed page(s) to Odeon. In performing such duty as the special agent for the Debtors hereunder, the special agent shall not be liable to the Debtors or anyone else for any asserted claims arising from the performance of such duties as the special agent for the debtors-in-possession. This provision is for the purpose of assuring that the parties are proceeding in the sale process of this Order with an executed APA, which sale remains subject to final Court approval at the Sale Hearing.

7.   As to the deadlines set forth in the APA and the Bid Procedures Motion, the Debtors may extend such dates or deadlines with the written agreement and consent of Odeon, in the exercise of Odeon's sole discretion.

8. Until the closing of a sale, the Debtors shall provide a weekly property report to Odeon (via e-mail, facsimile or mail) prepared by their on-site agent or representative which describes the current status and condition of the real property and improvements thereon, including any significant security issues, such as significant changes in condition (*e.g.*, vandalism, theft, storm damage, structural collapse, material erosion, etc.), and any significant occurrences or developments relative to the property. In regard to the seawall, it is acceptable to merely include photographs showing the condition and progress of erosion and structure.  The Debtors shall promptly notify any parties, including Odeon, of any change or lapse in their insurance coverage. A copy of this report shall be provided to the United States Trustee, and to any other creditor or party in interest in these cases who makes a written request for copies of such reports.

9. The United States Trustee and George E. Lee filed objections prior to the hearing on the Bid Procedures Motion, which objections related to the Sale Motion.  These objections are not adjudicated by this Order, and are preserved for the hearing on the Sale Motion.

**AND IT IS SO ORDERED.**